## In re WICKERSHAM.

(Fourth Division. Fairbanks. May 16, 1919.)

No. 2454.

*(Syllabus by Editorial Staff.)*

**United States** ☞14—Congress—Contest of Election.

Rev. St. U. S. § 110 (U. S. Comp. St. § 167), relating to contests of elections for seats in the House of Representatives, and providing for issuance of subpœnas by certain authorities, including judges of United States courts, at the instance of contestant or the returned member, must be construed with the other sections of chapter 8 (U. S. Comp. St. §§ 161–186), which require notice of contest, answer, apportionment of time for taking testimony, notice of taking of depositions, etc., but containing no provision for such an emergency as the death of a returned member prior to time for contest; hence, where an ex parte application to the court by contestant under section 110 recites the fact of such death, showing that by reason thereof there could have been no conformity with such other sections, the court is without jurisdiction to proceed until and unless the House of Representatives formulates rules of procedure to meet the emergency and the petition is conformed to such rules.

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The petition herein is as follows:

"In the Matter of Application of James Wickersham for Issuance of Subpœnas under Section 110, Revised Statutes of the United States. No. 2454. Petition.

"To Honorable Charles E. Bunnell, District Judge, Division 4, Alaska:

"Comes now your petitioner, James Wickersham, by his attorney, Morton E. Stevens, and respectfully shows to the court as follows:

"1. That at a general election held in the territory of Alaska on November 5, 1918, your petitioner was a candidate for election to the office of delegate to Congress on the Republican ticket, and one Charles A. Sulzer was a candidate for said office on the Democratic ticket. That the said Charles A. Sulzer is now deceased, and this proceeding is therefore ex parte.

"2. That on or about the 17th day of April, 1919, the canvassing board, created by law to canvass the returns of said election, certified that said Charles A. Sulzer had been duly elected at said election.

"3. That your petitioner is now contesting the legality of said election and the validity of said certificate in proper proceedings before the House of Representatives of the United States, and for the purpose of said contest desires to obtain certain testimony concerning said contested election, and desires to examine under oath respecting the said contested election the following named persons stationed at Fairbanks, Alaska. who were at the time of said election enlisted men in the military service of the United States and voted at said election, and whose right so to do is, in said contest, questioned, viz.: John E. Pegues, Herman B. Stenbuck, E. D. Whittle, and Durwood M. Hocker. And your petitioner desires the issuance of a writ of subpœna directed to each of said persons to attend, for said examination, before the honorable judge of said court on the 21st day of May, 1919, in the district court room at the courthouse in Fairbanks, Alaska, at the hour of 2 o'clock p. m. of said day, then and there to be examined respecting said contested election, pursuant to the provisions of section 110 et seq. of the Revised Statutes of the United States.

"And your petitioner will ever pray.

"Morton E. Stevens, Attorney for Petitioner.

"Territory of Alaska—ss.:

"Henry T. Ray, being first duly sworn, on oath deposes and says: That he is the agent of the petitioner herein, and that he has heard read the foregoing petition. and knows the contents thereof, and the facts therein stated are true as he verily believes.

"Henry T. Ray.

"Subscribed and sworn to before me this 14th day of May, 1919.

"Cecil H. Clegg,

"[Notarial Seal.]       Notary Public in and for Alaska.

"My commission expires Oct. 31, 1919."

Morton E. Stevens, of Fairbanks, for petitioner.

BUNNELL, District Judge. Chapter 8 of the Revised Statutes, sections 105 to 130, and amendments thereto (U. S. Comp. St. §§ 161–186), covers the subject of a contested election for a seat in the House of Representatives in so far as Congress has determined the same by legislative enactment. Under the Constitution of the United States each house is made "the judge of the elections, returns and qualifications of its own members," and in order to correctly determine the merits of a contested election, the House of Representatives has the power to prescribe such rules of procedure as will in its judgment best subserve the ends of justice and determine the matter as of right between contestant and contestee, always bearing in mind the fact that the people of the district "are the real parties in interest."

On the 5th day of November, 1918, a general election was held in the territory of Alaska for the purpose of electing a delegate to Congress from Alaska, members of the territorial Legislature and four road commissioners. All of the returns from the several precincts were not received by the canvassing board until about the 16th day of April, 1919. Thereafter, and on the 17th day of April, 1919, the canvassing board declared Charles A. Sulzer elected delegate to Congress from Alaska. The said Charles A. Sulzer died on the 15th day of April, 1919, and to fill the vacancy caused by Mr. Sulzer's death the Governor of the territory has called a special election to be held on the 3d day of June, 1919.

Section 110 of the Revised Statutes under which the petitioner, by his agent, is appearing, provides:

"When any contestant or returned member is desirous of obtaining testimony respecting a contested election, he may apply for a subpœna to either of the following officers who may reside within the congressional district in which the election to be contested was held;

"First. Any judge of any court of the United States.

"Second. Any chancellor, judge, or justice of a court of record of any state.

"Third. Any mayor, recorder, or intendent of any town or city.

"Fourth. Any register in bankruptcy or notary public."

This section must be construed in connection with the plain provisions of the following sections:

"Sec. 105. Whenever any person intends to contest an election of any member of the House of Representatives of the United States, he shall, within thirty days after the result of such election shall have been determined by the officer or board of canvassers authorized by law to determine the same, give notice, in writing, to the member whose seat he designs to contest, of his intention to contest the same, and, in such notice shall specify particularly the grounds upon which he relies in the contest.

"Sec. 106. Any member upon whom the notice mentioned in the preceding section may be served shall, within thirty days after the service thereof, answer such notice, admitting or denying the facts alleged therein, and stating specifically any other grounds upon which he rests the validity of his election; and shall serve a copy of his answer upon the contestant.

"Sec. 107. In all contested election cases the time allowed for taking testimony shall be ninety days, and the testimony shall be taken in the following order: The contestant shall take testimony during the first forty days, the returned member during the succeeding forty days, and the contestant may take testimony in rebuttal only during the remaining ten days of said period.

"Sec. 108. The party desiring to take a deposition under the provisions of this chapter shall give the opposite party notice, in writing, of the time and place, when and where the same will be taken, of the name of the witnesses to be examined and their places of residence, and of the name of an officer before whom the same will be taken. The notice shall be personally served upon the opposite party, or upon any agent or attorney authorized by him to take testimony or cross-examine witnesses in the matter of such contest, if, by the use of reasonable diligence, such personal service can be made; but if, by the use of such diligence, personal service cannot be made, the service may be made by leaving a duplicate of the notice at the usual place of abode of the opposite party. The notice shall be served so as to allow the opposite party sufficient time by the usual route of travel to attend, and one day for preparation, exclusive of Sundays and the day of service. Testimony in rebuttal may be taken on five days' notice. * * *

"Sec. 111. The officer to whom the application authorized by the preceding section [section 110] is made shall thereupon issue his writ of subpœna, directed to all such witnesses as shall be named to him, requiring their attendance before him, at some time and place named in the subpœna, in order to be examined respecting the contested election. * * *

"Sec. 121. The testimony to be taken by either party to the contest shall be confined to the proof or disproof of the facts alleged or denied in the notice and answer mentioned in sections one hundred and five and one hundred and six.

"Sec. 122. The officer shall cause the testimony of the witnesses, together with the questions proposed by the parties or their agents, to be reduced to writing in his presence, and in the presence of the

parties or their agents, if attending, and to be duly attested by the witnesses respectively.   *   *   *

"Sec. 125. The notice to take depositions, with the proof or acknowledgment of the service thereof, and a copy of the subpœna, where any has been served, shall be attached to the depositions when completed.

"Sec. 126. A copy of the notice of contest, and of the answer of the returned member, shall be prefixed to the depositions taken, and transmitted with them to the clerk of the House of Representatives."

Sections 110 to 130, inclusive, of the Revised Statutes, contain no provisions to meet the present emergency. If they did, the petitioner would avail himself of them. He does not comply with section 105, because in the very nature of things it is impossible for him to do so. He cannot "give notice, in writing, to the member whose seat he designs to contest, of his intention to contest the same," when the one who would have become a member, had he lived, died two days before the canvassing board determined the result of the election.

How can it be said that the death of him who would have been the contestee had he lived abrogates the statutes and confers upon the petitioner herein the privilege of initiating the proceeding herein styled "ex parte"? This must be the view taken by the petitioner, for the last sentence of the first paragraph of the petition reads:

"That the said Charles A. Sulzer is now deceased, and this proceeding is therefore ex parte."

No officer mentioned in section 110 is authorized to undertake to establish a rule of procedure to supplement the existing law, nor, on the other hand, should he follow a course of action wholly unauthorized. Undoubtedly the House of Representatives will, as soon as it is advised of the present emergency, determine, by virtue of its inherent power, a rule of procedure, if such be necessary, whereby all rights of the petitioner will be entirely safeguarded. (Congress will convene in special session on May 19, 1919.)

Counsel for petitioner states that the petition is presented to the judge of this court upon telegraphic request by petitioner to his agent Henry T. Ray. He insists that, since there is no contestee, subpœnas should issue and testimony should be taken ex parte. Under what rule of reason or

principle of law this contention is based, counsel does not state, nor am I able to discover. Counsel indicates that petitioner's contest was recently filed. The date is not given in the petition. Had Charles A. Sulzer lived, and had he become a "member of Congress," he would have had 30 days after the service upon him of notice of contest to answer such notice and serve a copy of his answer upon the contestant. No testimony would have been taken prior to the serving of the answer unless perchance upon the stipulation of contestant and contestee. The petition is unaccompanied by any notice of contest; there is no service, nor could there be at the present time; there is no issue joined; there is no notice to take depositions with the proof or acknowledgment of the service thereof. No officer mentioned in section 110, in the event he should issue subpœnas and take testimony, could comply with the provisions of section 121 in taking testimony, nor could he comply with sections 125 and 126 in transmitting the same to the clerk of the House of Representatives.

Counsel also states one of the reasons for petitioning to take testimony before the judge of this court is that certain legal questions could be determined by the court. Counsel must be under a misapprehension concerning the functions and duties of the officers mentioned in section 110 in the matter of taking depositions in contested election cases. In Re Howell (D. C.) 119 Fed. 467, the court said, in passing upon an application for the production of papers under section 123, where notice of contest had been given to the contestee and where notice of application as above had been served upon contestee:

"The authority given by the section of the Revised Statutes referred to cannot be questioned, and I cannot refuse an application which is brought within its terms. It is immaterial whether an issue has yet been made up or not, because if testimony were being taken I would have no right to pass upon its relevancy or irrelevancy."

The statement, "It is immaterial whether an issue has yet been made up or not," refers to the provision in section 123, reading:

"The officer shall have power to require the production of papers."

If the House of Representatives shall prescribe a rule of procedure in keeping with petitioner's contention, and an application meeting the requirements thereof is presented to an officer mentioned in section 110, subpœnas should issue as a matter of course.

It necessarily follows from the foregoing that the application of the petitioner to the judge of this court, who is one of the officers mentioned in section 110, to issue subpœnas to the persons named in said petition to appear and testify at 2 p. m. on the 21st day of May, 1919, must be denied, for the same is premature, and the officer is without jurisdiction in the premises.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes